# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mountain Marketing Group, LLC, and John A. Krueger d/b/a Krueger Law Firm,<br><br>Plaintiffs,<br><br>v.<br><br>Heimerl & Lammers, LLC,<br><br>Defendant. | Case No. 14-cv-846 (SRN/BRT)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

David P. Jendrzejek, Glen E. Schumann, and Taylor D. Sztainer, Moss & Barnett, P.A., 150 South Fifth Street, Suite 1200, Minneapolis, MN 55402, for Plaintiffs.

J. Ashwin Madia, Cody Blades, and Joshua Newville, Madia Law LLC, 345 Union Plaza, 333 Washington Ave. N., Minneapolis, MN 55401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Heimerl & Lammers, LLC's Motion for Attorney Fees ("Motion") [Doc. No. 222]. A hearing on the Motion was held on February 5, 2016. For the reasons set forth below, Defendant's Motion is denied.

**I.   BACKGROUND**

This trademark infringement case was vigorously litigated for nearly two years. The factual background of this matter was extensively set-forth in previous orders. The Court recites only the background relevant to the instant Motion.

Plaintiffs Mountain Marketing Group, LLC and John A. Krueger d/b/a Krueger Law Firm (collectively, "Plaintiffs") brought state and federal trademark infringement

1

claims against Defendant Heimerl & Lammers, LLC ("Defendant"). (See First Amended Compl. ("Compl."), Counts I–VII [Doc. No. 39].) Specifically, Plaintiffs accused Defendant of willfully infringing on their mark—the alphanumeric telephone number 1-800-INJURED ("800-INJURED")—by using and advertising the mark 1-612-INJURED ("612-INJURED"). (See Compl. at ¶¶ 13–32.) Plaintiffs sought monetary and injunctive relief. (See id., Prayer for Relief at 14–16.[1]) Defendant denied that its use of 612-INJURED constituted infringement. (See Ans. to First Amended Compl. [Doc. No. 40].)

Defendant moved for summary judgment on all of Plaintiffs' claims and Plaintiffs moved for partial summary judgment on certain liability issues. (See Doc. Nos. 95 and 99.) The Court denied both motions. (See Order dated September 23, 2015 ("SJ Order") [Doc. No. 144].) In relevant part, the Court found that material fact questions regarding the likelihood of confusion between the marks and whether Defendant willfully infringed on the Plaintiffs' mark precluded granting summary judgment to either side. (See SJ Order at 13–31.)

As the parties engaged in discovery and motion practice, they also exchanged settlement demands. (See Decl. of Cody Blades [Doc. No. 225], Exs. B ("Def.'s Settlement Conf. Ltr.") [Doc. No. 225-2] and C ("Pls.' Settlement Ltr.") [Doc. No. 225-3]; Decl. of Taylor Sztainer [Doc. No. 230], Ex. A ("Def.'s Trial Settlement Ltr.") [Doc. No. 230-2].) Those demands reflected the extensive attorneys' fees each side had incurred. (See Def.'s Settlement Conf. Ltr. at 1–2 (describing Plaintiffs' settlement offer which

---

[1] The Court cites to the page numbers of this section since no paragraph numbering is included.

demanded over $500,000 in attorneys' fees).  Both sides at one point demanded one million dollars to settle the case—putting them two million dollars apart.  (See Pls.' Settlement Ltr. (describing Plaintiffs' offer to settle if they received one million dollars); Def.'s Trial Settlement Ltr. (describing Defendant's offer to settle if it received one million dollars).) Not surprisingly, no settlement was reached and the case proceeded to a jury trial.

At trial, Defendant argues that Plaintiffs' case suffered several setbacks.  First, in an effort to show the commercial strength of 800-INJURED, testimony was elicited from Plaintiff Krueger ("Krueger") regarding his advertisement of 800-INJURED as a licensee of the mark.  (See Court Minutes dated December 17, 2015 ("Dec. 17 Court Minutes") at 1 [Doc. No. 203].)  However, on cross-examination and later in argument before the Court outside the presence of the jury, Defendant argues that it became clear that Krueger's testimony was based on unreliable speculation or documents which were not properly produced to Defendant.  (See Dec. 17 Court Minutes at 1.)  The Court ultimately excluded the previously unproduced documents and issued a corrective instruction that the jury should disregard Krueger's testimony on the subject.  (See id. at 1–2.)

Second, Defendant notes that Plaintiffs' expert on consumer confusion, Dr. Leon Kaplan, testified that consumer confusion between 800-INJURED and 612-INJURED likely *benefited* the Plaintiffs because consumers were more likely to remember and call a toll free number.  He also testified that few, if any, of the consumers he surveyed believed there was an affiliation, sponsorship, or other connection between 612-INJURED and Plaintiff Krueger (the local licensee and user of 800-INJURED).

Moreover, Defendant argues that, throughout the trial, Plaintiffs' counsel struggled

3

to abide by the scheduling and timing instructions of the Court.  For instance, Defendant notes that the Court explicitly told the parties they would have 50 minutes each for closing arguments.  Despite this instruction—and Defendant's counsel adhering to it in his closing—Plaintiffs' counsel presented closing arguments for over an hour and fifteen minutes.  During that closing, Plaintiffs' counsel announced for the first time that Plaintiffs only sought one dollar in monetary damages.[2]  However, after less than three hours of deliberation, the jury returned a complete defense verdict, finding no infringement.  (See Court Minutes dated December 22, 2015 [Doc. No. 212]; Special Verdict Form [Doc. No. 219].)

Defendant now seeks to recover its attorneys' fees totaling just over $400,000.  (See Def.'s Mem. of Law in Supp. of Mot. for Attorney Fees ("Mem. in Supp.") at 16 [Doc. No. 224].)  Defendant claims this case was "exceptional" because Plaintiffs pursued "a groundless case in an unreasonable manner," tried to intimidate Defendant into settling through unreasonable settlement demands, ultimately requested only one dollar in damages from the jury despite nearly two years of litigation, and repeatedly ignored the Court's timing and scheduling instructions.  (See id. at 1.)  Plaintiffs oppose this Motion.  (See generally Pls.' Mem of Law in Opp. to Def.'s Mot. for Attorney Fees ("Mem. in Opp.") [Doc. No. 229].)  Plaintiffs argue that the fact that their claims survived summary judgment and that strong evidence was presented at trial in support of a finding of infringement precludes a finding that this case was "exceptional."  (See id. at 8–26.)

---

[2] Plaintiffs explained that they were primarily interested in the Court granting them injunctive relief (e.g., an order enjoining Defendant from using 612-INJURED) if the jury found there was infringement.

4

## II.   DISCUSSION

### A. Standard of Review

Under the Lanham Act, which governs federal trademark infringement, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). One of the Senate reports on the Lanham Act described the allowance of attorney fees as "protection against unfounded suits brought by trademark owners for harassment and the like." S. Rep. No. 93-1400, 93d Cong. 2d Sess. "When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant." Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996). Put another way, an exceptional case "is one in which one party's behavior went beyond the pale of acceptable conduct." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 877 (8th Cir. 1994).

A district court has considerable discretion when deciding if a case is exceptional under § 1117(a). See Fair Isaac Corp. v. Experian Info. Sols., Inc. (Fair Isaac II), 650 F.3d 1139, 1152 (8th Cir. 2011). For instance, a district court does not abuse its discretion by refusing to award attorneys' fees where a plaintiff's trademark infringement claim has at least some merit, but ultimately fails. See id. at 1152–53 (upholding a district court's refusal to award attorneys' fees where plaintiff's infringement claim survived summary judgment, but was rejected by a jury). "Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive. A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against

5

the suit." Iowa Health Sys. v. Trinity Health Corp., 177 F. Supp. 2d 897, 928 (N.D. Iowa 2001) (citing Door Sys., Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1032 (7th Cir. 1997)).

Recently, the Supreme Court set-forth the standard for exceptional cases warranting attorneys' fees in the patent infringement context. See Octane Fitness, LLC v. ICON Health & Fitness, Inc. (Octane Fitness I), 134 S. Ct. 1749 (2014) (examining 35 U.S.C. § 285 which contains language identical to that in 15 U.S.C. § 1117(a)).

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Id. at 1756. A nonexclusive list of factors that may be considered in the exceptionality analysis include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[3] Id. at 1756, n.6 (quotations omitted).

At least two circuits have applied Octane Fitness I's exceptional case standard to trademark infringement claims under § 1117(a). See Georgia-Pac. Consumer Products LP v. von Drehle Corp., 781 F.3d 710, 720 (4th Cir. 2015), as amended (Apr. 15, 2015); Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314–15 (3d Cir. 2014); see also Slep-

---

[3] The Court also struck down the requirement that the moving party prove its entitlement to attorneys' fees by clear and convincing evidence, imposing a less demanding preponderance of the evidence standard. See Octane Fitness I, 134 S. Ct. at 1758.

Tone Entm't Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 313, 317–18 (6th Cir. 2015) (noting the similarities between 35 U.S.C. § 285 and 15 U.S.C. § 1117(a) and directing that on remand the district court assess the applicability of Octane Fitness I to its exceptional case analysis); Memory Lane, Inc. v. Classmates, Inc., No. 14-55462, 2016 WL 1169432, at *2 (9th Cir. Mar. 25, 2016) (holding that a case was not exceptional under Octane Fitness I or the Ninth Circuit's exceptional trademark infringement case analysis). The Eighth Circuit has yet to address the applicability of the Octane Fitness I exceptional case standard to trademark infringement claims under § 1117(a). However, the Court need not resolve whether Octane Fitness I applies in this context. Octane Fitness I's standard is substantively similar to the one currently employed by the Eighth Circuit and this case is not exceptional under either standard.

### B. Plaintiffs' Intent in Pursuing Their Claims

As the registered owners of the mark 800-INJURED, Plaintiffs must reasonably defend their mark from infringers or risk abandoning the mark or acquiescing to infringement. See 15 U.S.C. §§ 1069, 1115(b)(9); Masters v. UHS of Delaware, Inc., 631 F.3d 464, 469 (8th Cir. 2011) ("Acquiescence may bar an infringement suit when the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." (quotations omitted)); Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC, 829 F. Supp. 2d 836, 842–43 (D. Minn. 2011) (rejecting the argument that a plaintiff abandoned its trademark where the plaintiff had "put Defendants on notice numerous times . . . that it did not consent to their continued use of the marks and intended to enforce its trademark rights"). Of course, this

does not allow trademark holders to advance frivolous claims of infringement in bad faith. However, it does contextualize why attorneys' fees are awarded only in exceptional cases.

There is no evidence that Plaintiffs brought their infringement claims against Defendant in bad faith. In fact, Plaintiffs previously had some success pursuing other alleged infringers who used alphanumeric telephone numbers similar to 800-INJURED (e.g., 312-INJURED) through administrative trademark proceedings. (See Court Minutes dated November 30, 2015 [Doc. No. 184] (denying Defendant's motion *in limine* to exclude evidence of Plaintiffs' successful enforcement actions before the U.S. Patent and Trademark Board against users of the mark 312-INJURED)). Furthermore, discovery produced several emails where Defendant espoused its desire to "piggyback" on the branding of other personal injury lawyers (although not specifically Plaintiffs) by mimicking the colors and styles of their advertisements. (See SJ Order at 5.) As this Court previously noted, these emails, along with other evidence, raised material fact questions about whether Defendant was aware of Plaintiffs' 800-INJURED mark and intended to infringe on it by using 612-INJURED. (See id. at 24.) Under these circumstances, the Court cannot conclude Plaintiffs pursued their claims against Defendant in bad faith or with vexatious intent.

### C. The Strength of Plaintiffs' Claims

Plaintiffs' claims were not groundless or without merit. They survived Defendants' motion for summary judgment, a fact that strongly suggests a case is not exceptional. See Fair Isaac Corp. v. Experian Info. Sols. Inc. (Fair Isaac I), 711 F. Supp. 2d 991, 1010–11 (D. Minn. 2010), aff'd, 650 F.3d 1139 (8th Cir. 2011) (the fact that plaintiff's infringement claim survived summary judgment and a motion for judgment as a matter of

law at the close of trial was strong evidence the case was not exceptional, frivolous, or meritless); Scott v. Mego Int'l, Inc., 524 F. Supp. 74, 75 (D. Minn. 1981) (plaintiff's infringement claim withstood summary judgment and a motion to dismiss at the end of plaintiff's case-in-chief and thus was not exceptional). Plaintiffs' evidence for some elements of their claims (e.g., likelihood of confusion and damages[4]) was ultimately unconvincing, but this does not merit awarding attorneys' fees. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123–24 (8th Cir. 1987) (upholding a denial of attorneys' fees despite the weakness in one element of the plaintiff's infringement claim which resulted in summary judgment in the defendant's favor); Transclean Corp. v. Bridgewood Servs., Inc., 134 F. Supp. 2d 1049, 1060–61 (D. Minn. 2001), aff'd, 290 F.3d 1364 (Fed. Cir. 2002) (granting summary judgment in favor of the defendant against the plaintiff's infringement claims, but denying the defendant's motion for attorneys' fees because there was at least some evidence to support those claims). Even the fact that the jury quickly returned a verdict in favor of the Defendant does not merit awarding attorneys' fees. See Fair Isaac I, 711 F. Supp. 2d at 1011 (refusing to award attorneys' fees despite the fact

---

[4] Defendant argues that Plaintiffs "attempted to manufacture evidence at trial" by eliciting testimony from Krueger regarding his pre-2014 advertising expenses for 800-INJURED "for the purpose of increasing Plaintiffs' monetary damages"—despite having "no evidence" of such expenses. (Mem. in Supp. at 3, 12.) This is not an accurate characterization of the record. First, Plaintiffs elicited Krueger's testimony at least in part to prove the commercial strength of 800-INJURED, an element in assessing the likelihood of confusion between the marks. Second, Plaintiffs had evidence of Krueger's pre-2014 advertising expenses, but failed to properly disclose it to Defendant. Thus, the Court struck that evidence as a sanction. Plaintiffs did not "manufacture" evidence (i.e., create evidence of something that did not exist), but rather failed to properly disclose it. Although the Court does not condone Plaintiffs' failure to disclose the evidence of Krueger's pre-2014 advertising expenses, that failing does not provide the basis for awarding attorneys' fees.

that, "The jury's resolution of this case suggests that [the plaintiff] badly misjudged the evidentiary strength of its infringement claims.").

### D. Plaintiffs' Settlement Offers and Delays at Trial

As described above, the jury's verdict suggests Plaintiffs misjudged the strength of their infringement claims. Plaintiffs' demands to settle the case for six and even seven figure sums reflect this erroneous conviction. However, Defendant cites no case law, nor can the Court find any, holding that a party's settlement demands—even when inflated based on mistaken perceptions about the strength of the party's claims—make a case exceptional. Similarly, the struggles Plaintiffs' counsel experienced in abiding by the Court's timing and scheduling instructions do not make this case exceptional. In short, Plaintiffs did not go "beyond the pale of acceptable conduct" in pursuing their claims. See Aromatique, 28 F.3d at 877.

### E. Exceptional Cases Under Octane Fitness I

The present matter is also not exceptional under the standard set-forth in Octane Fitness I. Again, the Supreme Court held that an exceptional case warranting attorneys' fees in the patent infringement context was "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness I, 134 S. Ct. at 1756. On remand, the district court stated that:

> In comparing this case to the many patent cases over which this Court has presided during the past 22 years as a federal judge, [plaintiff's] litigation position stands out as a particularly and unusually weak case on the merits. … [The plaintiff] must have known that the odds of winning this lawsuit were very slim.

Icon Health & Fitness, Inc. v. Octane Fitness, LLC (Octane Fitness II), 112 F. Supp. 3d 888, 895 (D. Minn. 2015).

The district court went on to describe the plaintiff's tactics which were designed to drive up the costs of litigation, such as naming an additional defendant who was subsequently dismissed after the plaintiff dropped the charges against him. See id. at 896. The defendant also produced evidence that the plaintiff knew its patent infringement claims were weak, yet pursued them as a form of harassment and in the hope of extracting a settlement. See id. at 897–99. Under these circumstances, the court found it necessary to award attorneys' fees "to deter [the plaintiff] from future attempts to extract royalties to which it is not entitled from a competitor who might rather settle a meritless patent infringement suit than pay the high cost to defend it." Id. at 899.

This case is markedly different from Octane Fitness II. As described above, Plaintiffs' infringement claims, although ultimately unsuccessful, were not unusually weak. In fact, Plaintiffs previously had some success in the administrative arena challenging other alleged infringers using marks similar to 612-INJURED. Nor is there any evidence Plaintiffs suspected their case lacked merit, but pursued it nonetheless in an attempt to extract a settlement from Defendant. Plaintiffs' high settlement demands evidence a strong belief in the validity of their claims and an unwillingness to settle. In the end, Plaintiffs' perceptions about the strength of their claims were incorrect, but that does not equate to vexatious intent or frivolous claims.

Furthermore, deterrence considerations do not require that the Court award attorneys' fees. Plaintiffs must pay their own considerable attorneys' fees and are now saddled with the adverse precedent set by their unsuccessful infringement claims against Defendant. These facts will deter Plaintiffs from pursuing similar—or less meritorious—litigation in the future. In short, the correct balance between allowing trademark holders to defend their marks and preventing frivolous litigation has been struck. An award of Defendant's attorneys' fees would disrupt rather than further this balance.

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Heimerl & Lammers, LLC's Motion for Attorney Fees [Doc. No. 222] is **DENIED**.

Dated: May 18, 2016                           s/ Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge